IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MITZI L. BRYANT                                                                    PLAINTIFF

VS.                                                  CIVIL ACTION NO.  3:18-cv-813-DPJ-FKB

ANDREW SAUL,[1] Commissioner
of Social Security                                                                 DEFENDANT

## REPORT AND RECOMMENDATION

### I.  Introduction

Mitzi L. Bryant filed a claim for disability insurance benefits on December 31, 2014,

alleging an onset date of September 23, 2014.  [13] at 13.[2]  After her application was denied

initially and upon reconsideration, she requested and was granted a hearing before an

administrative law judge (ALJ), which occurred on May 9, 2017.  *Id.* at 63-97.  On September

27, 2017, the ALJ issued a decision finding that Bryant was not disabled.  *Id.* at 13-29.  The

Appeals Council denied review.  *Id.* at 1-3. Plaintiff now brings this appeal pursuant to § 205(g)

of the Social Security Act, 42 U.S.C. § 405(g) and has filed a Motion for Summary Judgment

[14].  Having considered the memoranda of the parties and the administrative record, the

undersigned recommends that Plaintiff's Motion [14] should be denied and that the decision of

the Commissioner should be affirmed.

### II.  Facts and Evidence

Bryant was born on October 6, 1971, and was nearly 46 years of age at the time of the

2017 decision of the ALJ.  *Id.* at 29; 99.  She met the insured status requirements of the Social

---

[1] The government has responded that Andrew Saul is now the Commissioner of Social Security and should be
automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).
[2] Citations are to the original pagination of the administrative record.

Security Act through December 31, 2019. *Id.* at 15.  She completed an Associates degree in

nursing in 1993 and worked as a registered nurse at a Veterans' Administration Clinic from June

1993 to April 2014.  *Id.* at 169.  She worked as a registered nurse at a correctional facility from

June to September 2014.  *Id.*  After leaving employment at the correctional facility, she had two

unsuccessful work attempts at Kroger and Target in 2014.  *Id.* at 16.

　　In her application for benefits, she alleged that she was disabled because of depression;

seven surgeries on her right knee; osteoarthritis in knees, lower back, and neck; use of a

prescription knee brace; use of a cane for ambulation; need for assistance with activities of daily

living; inability to sit, stand, or walk long periods; nightmares; and sleep disturbances.  *Id.* at

168.  Bryant is five feet, six inches tall and weighs one hundred thirty-five pounds.  *Id.*

Following bariatric lap band surgery in 2007, she lost one hundred fifty pounds.  *Id.* at 284.

　　By her count, Bryant has had eight surgeries on her right knee, stemming from a

workplace injury that occurred in 1999 when she was attacked by a psychiatric patient.  *See id.* at

74-75; 355.  Unfortunately, not all of her surgeries are documented in the record.  The records

reference that she underwent an "ACL graft" at some unspecified point.  *Id.* at 300.  She also

underwent a unicompartmental knee arthroplasty of her medial compartment on December 13,

2011.  *Id.* at 341.  On February 2, 2016, Dr. Michael Dulske, her most recent treating orthopedic

surgeon, performed a right knee arthroscopy, lysis of adhesions, chondroplasty of patella, lateral

femoral condyle, and lateral tibial plateau.  *Id.* at 300-301.  At a follow-up visit, Dr. Dulske

prescribed a knee brace for support.  *Id.* at 325.  Following her complaints of knee pain and

difficulty with intermittent popping and catching, Dr. Dulske performed surgery on Bryant to

2

correct a genu valgus deformity of her right knee on April 11, 2017. *Id.* at 388-389.  The records

do not demonstrate that Dr. Dulske ever prescribed a cane for Bryant.

In June 2016, Dr. Dulske completed a medical source statement regarding Bryant's

ability to do work-related physical activities.  *Id.* at 345-350.  In the evaluation, he recommended

various restrictions on her work activities, including that she must lie "supine" for two hours out

of an eight-hour day, although she could sit for four hours, stand for one hour, and walk for one

hour.  *Id.* at 346.  He also stated that a cane was "medically necessary" for her to ambulate,

without identifying any medical or clinical findings to support his assessment.  *Id*.  He placed no

limitations on her handling, fingering, or feeling, but stated that she should only occasionally

reach and push/pull.  *Id.* at 347.  Dr. Dulske further stated that she could frequently operate foot

controls with her right foot and continuously operate foot controls with her left foot.  *Id.*  He

concluded that she should never climb stairs and ramps, climb ladders or scaffolds, stoop, kneel,

crouch, or crawl, but that she could occasionally balance.  *Id.* at 348.

The record does not reflect longstanding treatment for mental health issues.  Although

she reported that she had been seeing a psychiatrist, Dr. Andrew Bishop, since 2001, the record

shows only three visits in 2008, 2014, and 2015.  *Id.* at 240-244; 275-277.  Robert Nevels, Ph.D.,

performed a consultative examination on May 11, 2015.  *Id.* at 279-285.  Plaintiff reported to

him that she could bathe and dress herself, could drive, visited with family two to three times per

week, ate out once a week, and attended church on Sundays.  *Id.* at 281.  However, she reported

that she sometimes she stayed in bed due to pain.  *Id.*  Nevels observed that although she was

alert and attentive, she appeared blunted and sad.  *Id.* at 282.  She described that she cried a lot

and felt hopeless.  *Id.*  Dr. Nevels concluded that Bryant was "markedly depressed and

traumatized" and "not capable of performing routine, repetitive activities or capable of

interacting with others in a competitive work environment due to the nature and severity of these

symptoms." *Id.* at 284-285.  However, he thought her condition could improve if she received

"more appropriate mental health care . . . ." *Id.* at 285.

Amy Hudson, Ph.D., a state agency psychologist, reviewed Bryant's records in June 2015

and determined that Bryant had no limitations in understanding, memory, sustained

concentration, and persistence.  *Id.* at 106.  Hudson did find that Bryant had some moderate

limitations with social interactions, but she would have no adaptation limitations. *Id.* at 106-107.

She concluded that Bryant could "understand and remember simple instructions required by

unskilled work only[,]. . . could concentrate and attend for extended periods, maintaining focus

for at least 2-hour stints during a normal workday (though not longer)." *Id.* at 107.  Hudson also

found that Bryant could "interact with supervisors and coworkers at a very basic level" and

"adapt to a work environment" so that she could complete a "normal work week without

excessive interruption from psychologically based symptoms." *Id.*

At the May 2017 hearing, Bryant testified concerning her impairments and daily

activities.  She testified that, before her April 2017 surgery, her knee would give way and cause

her to fall as she was going up and down steps.  *Id.* at 70.  She stated that she could drive short

distances to see family and to visit a local store.  *Id.* at 70-71.  At the time of the hearing, she

could not yet put weight on her knee due to doctor's orders, but she was doing home physical

therapy in anticipation of formal physical therapy.  *Id.* at 75-76.  At the hearing, she testified that

she wore a knee brace and had used a cane for eight years.  *Id.* 76-77.  She stated that she was

unable to complete grocery shopping by herself, but that she could walk a "good distance" with

the cane. *Id.* at 78. Although she might have to stop and manipulate her right leg, she could

continue walking. *Id.* She estimated that she could sit one hour before needing to adjust her leg

and move around, and that she could stand for ten to fifteen minutes before returning to a seated

position. *Id.* She described that her knee caused some degree of constant pain, and that she

treats the pain with medication and heat therapy. *Id.* at 78-79. Bryant related that she had

osteoarthritis in her neck and hips, but that she had not specifically sought treatment for those

conditions other than the medications prescribed for her knee. *Id.* at 80. Bryant testified that she

has depression and anxiety issues that cause her to stay in bed some days, but that her

prescription for Cymbalta assists with both pain and her depression. *Id.* at 81. Her prescription

for Klonopin helps with anxiety, but she does have problems with concentration. *Id.* at 82. She

testified that she needs help from family to complete household chores, but that she can bathe

and groom herself. *Id.* at 82-83. She also prefers not to shop alone because her anxiety causes

her to startle easily. *Id.* at 84.

## III.  The Decision of the ALJ

In evaluating Plaintiff's claim, the ALJ worked through the familiar sequential evaluation

process for determining disability.[3]  The ALJ found that Bryant had the following severe

---

[3] In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

>    (1)    whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

>    (2)    whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

>    (3)    whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

>    (4)    whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

impairments:  degenerative joint disease of her right knee, depression, anxiety disorder, and post-traumatic stress disorder.  *Id.* at 16.  The ALJ concluded that none of Bryant's impairments met the listings or was equivalent in severity to a listed impairment.  *Id.* at 17-19.  He specifically found that her degenerative joint disease of her right knee did not meet the criteria of Listing 1.02A or 1.03.  *Id.* at 17.  He also evaluated her mental impairments and concluded that she did not meet the criteria of Listings 12.04, 12.06, and 12.15.  *Id.* at 17-19.  After considering the record, the ALJ determined that Bryant had the residual functional capacity to "perform sedentary work . . . except that she cannot operate foot controls with her right lower extremity.  She is limited to the performance of simple, routine tasks and can tolerate only occasional contact with the public."  *Id.* at 19.  In determining Plaintiff's RFC, the ALJ considered her testimony regarding her pain and limitations but determined that her allegations were not entirely consistent with the medical evidence and other evidence in the record.  *Id.* at 20.  He also considered the opinions of Bryant's treating orthopedic surgeon, Dr. Dulske, and the consultative psychologist, Dr. Nevels, but he accorded them little weight.  *Id.* at 24-26.  The ALJ determined that Bryant is unable to perform any of her past relevant work as a nurse.  *Id.* at 26-27.  With the assistance of a vocational expert, the ALJ identified three jobs in the sedentary category that Plaintiff could perform, as follows: addresser, film touch-up inspector, and table worker. *Id.* at

---

(5)      whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. § 416.920.  The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining her burden through step four, the burden then shifts to the Commissioner at step five.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

6

27-28.  Accordingly, the ALJ concluded that Plaintiff was not disabled from her onset date of

September 23, 2014, through the date of the decision, September 27, 2017.  *Id.* at 28-29.

## IV. Standard of Review

This Court=s review is limited to an inquiry into whether there is substantial evidence to

support the Commissioner=s findings, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and

whether the correct legal standards were applied, 42 U.S.C. § 405(g) (2006).  *Accord Falco v.*

*Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

The Fifth Circuit has defined the Asubstantial evidence@ standard as follows:

> Substantial evidence means more than a scintilla, less than a preponderance, and
> is such relevant evidence as a reasonable mind might accept as adequate to
> support a conclusion.  It must do more than create a suspicion of the existence of
> the fact to be established, but Ano substantial evidence@ will be found only
> where there is a Aconspicuous absence of credible choices@ or Ano contrary
> medical evidence.@

*Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).  In applying the substantial evidence

standard, the Court must carefully examine the entire record, but must refrain from re-weighing

the evidence or substituting its judgment for that of the Commissioner.  *Ripley v. Chater*, 67 F.3d

552, 555 (5th Cir. 1995).  Conflicts in the evidence and credibility assessments are for the

Commissioner and not for the courts to resolve.  *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.

1995).  Hence, if the Commissioner=s decision is supported by the evidence, and the proper legal

standards were applied, the decision is conclusive and must be upheld by this Court.  *Paul v.*

*Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), *overruled on other grounds, Sims v. Apfel,* 530 U.S.

103 (2000).

### V. Issues for Review

Plaintiff argues that the ALJ's decision is not supported by substantial evidence and warrants remand for the following reasons:

1.  The ALJ failed to perform the proper analysis related to Bryant's use of the cane;

2.  The ALJ's opinion analysis is not supported by substantial evidence;

3.  The ALJ's analysis of the mental impairments is not supported by the record; and

4.  The ALJ's subjective symptom analysis is flawed.

The undersigned will discuss each argument, in turn.

### A.  Did the ALJ properly analyze Bryant's use of a cane?

Plaintiff argues that the ALJ failed to perform a proper analysis related to Bryant's use of her cane. She asserts that the ALJ failed to account for the medical necessity of using a cane when analyzing the jobs that she could perform.

Before an ALJ is required to make a finding regarding the medical necessity of a hand-held assistive device, medical documentation must substantiate the need.  Social Security Ruling ("SSR") 96-9P states, in relevant part,

> [t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e. whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information.).

SSR 96-9P, 1996 WL 374185, *7 (July 2, 1996).

Although Bryant asserts that she had used a cane for eight years, Dr. Dulske never prescribed a cane for her. While the doctor did prescribe a knee brace for her after one of her procedures, he never suggested or referenced a cane in his many evaluations of her.  He did, however, state in his June 2016 medical source statement that Bryant would require the use of

8

cane to ambulate. [13] at 346.  Dr. Dulske, nevertheless, failed to follow-up his recommendation by identifying any medical or clinical findings that supported his assessment.  *Id.*  Dr. Dulske's medical source statement, in its questionnaire format, "typifies 'brief or conclusory' testimony" looked upon with disfavor by the Fifth Circuit.  *See Foster v. Astrue*, 410 Fed. Appx. 831, 833 (5th Cir. 2011).  Accordingly, the undersigned finds that the ALJ did not err when he did not separately consider the medical necessity of a cane in his decision, thus his decision is supported by substantial evidence.

Even if the ALJ had erred, reversal is only appropriate if the Plaintiff was prejudiced. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  "Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected." *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir.1988).  Plaintiff "must show that, had the ALJ done his duty, [Plaintiff] could and would have adduced evidence that might have altered the result."  *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984).  In this case, the ALJ specifically elicited testimony from the vocational expert regarding whether the jobs the vocational expert identified could still be performed by a person with a cane.  [13] at 92.  The vocational expert testified that a cane could be used during the periods of time that a worker was standing or walking at the sedentary job.  *Id.*  Accordingly, because the ALJ identified sedentary jobs that could be performed with a cane, Plaintiff has failed to demonstrate prejudice.  *See Howze v. Barnhart*, 53 Fed. App'x 218, 222 (5th Cir. 2002)(finding no prejudice to plaintiff even if ALJ erred in analysis of medical necessity of cane because vocational expert identified cane-appropriate jobs).  Therefore, this argument does not provide the basis for reversal.

**B. Is the ALJ's analysis of opinion evidence supported by substantial evidence?**

Plaintiff argues that the ALJ erred by according "little weight" to the opinion of her treating orthopedic surgeon, Dr. Dulske. She also asserts that because the ALJ gave "little weight" to two state agency doctors who reviewed her medical records in June 2015 and found she had the capacity for "light work," there is no medical opinion evidence underpinning the decision. [15] at 16. Thus, Plaintiff argues that the ALJ wrongfully substituted his opinion for that of a physician.

Dr. Dulske was Bryant's treating orthopedic surgeon. In the RFC assessment form, Dr. Dulske indicated that Bryant suffered from limitations so severe as to preclude her from any employment by indicating that she must lie supine for two hours per day. *Id.* at 346. He made this assessment without referencing any medical or clinical findings. *Id.* He also imposed other restrictions, such as use of a cane and environmental restrictions, without reference to medical or clinical findings. *Id.* at 345-350. In his decision, the ALJ gave Dr. Dulske's opinion little weight because it was not supported by the evidence and was inconsistent with the record as a whole. *Id.* at 24-25.

In the Fifth Circuit, the law provides that a treating physician's opinion as to the nature and severity of a claimant's impairment generally deserves great weight. *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005).[4] However, where good cause is shown, less weight, or even no weight, may be given to a treating physician's opinion. *Id*. at 466. Good cause may be established where the treating physician's opinion is "brief or conclusory, not supported by

---

[4] The basis of the treating physician rule is 20 C.F.R. § 404.1527(c)(2). In January of 2017, the Social Security Administration repealed the rule effective for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017), 2017 WL 168819.

medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Id*. at 466 (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1991)).

Dr. Dulske's RFC assessment described limitations in excess of those supported in the treatment records of the doctor and the record as a whole. Moreover, Dr. Dulske's opinion was expressed primarily by the circling and checking of items on a form. The Fifth Circuit has stated that the questionnaire format "typifies 'brief or conclusory' testimony." *Foster*, 410 Fed. Appx. at 833.

Moreover, the ALJ's decision to give Dr. Dulske's opinion "little weight" complied with the requirements of *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000). In *Newton*, the Fifth Circuit held that where there is no conflicting opinion by a treating or examining physician, the ALJ may reject a treating physician's opinion only if the ALJ performs a detailed analysis of the opinion considering the following factors: (1) The length of treatment; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the opinion in the medical evidence; (5) the consistency of the opinion with the record as a whole; and (6) the treating physician's specialization. *Newton*, 209 F.3d at 453.[5]

Although the ALJ did not specifically cite *Newton* as a framework for his analysis of Dr. Dulske's opinion, he performed a detailed examination of the doctor's opinion. See [13] at 24-25. The ALJ referenced in his decision the support (or lack thereof) for Dr. Dulske's assessment in the treatment records and in the medical evidence as a whole, as well as in the testimony of Bryant and submissions by her husband. *Id.* To the extent that there was error in the ALJ's failure to specifically discuss certain factors, the undersigned concludes that the error was

---

[5] The source of this list of considerations is 20 C.F.R. § 404.1527(d)(2).

harmless.  In *Rollins v. Astrue*, the Fifth Circuit held that the ALJ's failure to explicitly discuss

each of the *Newton* factors constituted harmless error.  *Rollins v. Astrue*, 464 Fed Appx 353, 358

(5th Cir. 2012).  The court reasoned that because the ALJ had before him all of the information

required for consideration of the factors not explicitly addressed, it was unlikely that explicit

consideration of those factors would have changed the result.  *Id.*  Similarly, in the present case,

the ALJ had before him several years of Dr. Dulske's treatment of Plaintiff, and there is no

reason to believe that a more detailed discussion by the ALJ would have yielded a different

result, given the lack of objective medical findings supporting the degree of limitations described

by Dr. Dulske.

Finally, Plaintiff argues that the ALJ substituted his opinion for that of a medical

professional.  To the contrary, the ALJ had the entire record before him, including Bryant's most

recent surgery of April 2017, when he made his decision.  What Bryant "characterizes as the ALJ

substituting his opinion is actually the ALJ properly interpreting the medical evidence to

determine [Bryant's] capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).

Accordingly, the undersigned finds that this argument does not provide the basis for reversal or

remand.

### C.  Is the ALJ's mental RFC supported by substantial evidence?

The ALJ concluded that Bryant is "limited to the performance of simple, routine tasks

and can tolerate only occasional contact with the public."  [15] at 19.  Plaintiff argues that this

assessment runs counter to the opinion of the consultative examiner, Dr. Nevel, as well as the

state agency examiner, Dr. Hudson.  In May 2015, Dr. Nevel found that Plaintiff was "markedly

depressed and traumatized" and could not perform "routine, repetitive activities" or interact with

others in a "competitive work environment. . . ." *Id.* at 284.  The ALJ accorded Nevel's opinion

12

"little weight." *Id.* at 26. In June 2015, Dr. Hudson found that Bryant could "interact with supervisors and coworkers at a very basic level." *Id.* at 107. On the other hand, she concluded that Bryant could "understand and remember simple instructions required by unskilled work only" and "would be able to adapt to a work environment adequately in order to complete a normal work week without excessive interruption from psychologically based symptoms." *Id.* The ALJ accorded "moderate weight" to Hudson's opinion. *Id.* at 25.

In his decision, the ALJ pointed out the lack of treatment for her alleged conditions and the inconsistencies between the evaluations and her accounts of her daily activities. *See id.* at 19. Indeed, the records show that she sought treatment from her "treating psychiatrist" only once between her alleged onset date of September 23, 2014, and the hearing date of May 9, 2017. *Id.* at 275. Furthermore, she reported continued good social interactions with family and friends, and limited social and shopping outings, despite her allegations of anxiety and depression. By her own admission, medications prescribed by Dr. Dulske helped ease her depression and anxiety. *Id.* at 81-82. Thus, based on Dr. Hudson's assessment that she could adapt to a work environment and Plaintiff's admissions, the undersigned finds that substantial evidence supports the ALJ's determination that she can perform "simple, routine tasks and can tolerate only occasional contact with the public."

### D.  Did the ALJ err in evaluating Plaintiff's subjective symptoms?

Plaintiff's remaining argument is that the ALJ failed to properly assess Bryant's subjective symptoms of pain and other symptoms. In essence, Plaintiff argues that the ALJ picked and chose evidence from the record to support his decision while he ignored credible evidence of her limitations.

The Court notes that the evaluation of a claimant=s subjective symptoms is a task

particularly within the province of the ALJ who had an opportunity to observe whether he or she

seemed to be disabled.  *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988).  To prove disability

resulting from pain, an individual must establish a medically determinable impairment that is

capable of producing disabling pain.  20 C.F.R. §§ 404.1529(a), 416.929(a)(1997); *Ripley v.*

*Chater*, 67 F.3d 552, 556 (5th Cir. 1995).  Once a medical impairment is established, the

subjective complaints of pain must be considered along with the medical evidence in

determining the individual=s work capacity.  *Id.*

At the time of the hearing, the ALJ had before him the records of several of Bryant's

surgeries, years of treatment, and the record of her recent surgery.  He fully questioned the

claimant about her condition at the hearing.  In his opinion, the ALJ fully discussed the

plaintiff=s medical conditions.  [13] at 16-26.  The ALJ considered her issues with prolonged

standing or walking.  *Id.* at 21-22.  He also discussed that her activities, such as visiting with

relatives, doing some household chores, and driving occasionally, were inconsistent with

disabling pain.  *Id.* at 22-23; 25-26.  The ALJ also considered the consultative mental exam of

Dr. Nevel along with the state agency's evaluation by Dr. Hudson, and he determined that Dr.

Nevel's conclusions were internally inconsistent and at odds with Dr. Hudson's conclusions and

other record evidence.  *Id.* at 25-26.  Because the foregoing evidence shows that the ALJ

considered Bryant=s complaints of pain along with her activities and the medical evidence, the

undersigned finds that the record contains substantial evidence to support the ALJ=s decision and

must give considerable deference to the ALJ=s evaluation of the plaintiff=s credibility and

severity of limitations. *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).  Accordingly, the

14

ALJ's decision on Plaintiff's subjective symptoms is supported by substantial evidence and should be upheld.

### VI.  Conclusion

Accordingly, the undersigned concludes that the ALJ's decision was supported by substantial evidence and that no reversible error was committed.  Therefore, the undersigned recommends that Plaintiff's Motion for Summary Judgment [14] be denied, and that the decision of the Commission be affirmed.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. ' 636, *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

RESPECTFULLY SUBMITTED, this the 7th day of February, 2020.

 /s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE

15