UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MITZI L. BRYANT                                                      PLAINTIFF

V.                                                CIVIL ACTION NO. 3:18-CV-813-DPJ-FKB

ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION                               DEFENDANT

ORDER

       An Administrative Law Judge (ALJ) denied Plaintiff Mitzi Bryant's claim for disability benefits, and the Appeals Council denied review. Bryant then appealed to this Court and filed a motion for summary judgment [14]. Upon referral, United States Magistrate Judge F. Keith Ball recommended that the Court deny Bryant's motion and affirm the Commissioner's decision. Report and Recommendation (R&R) [19]. Bryant now objects to Judge Ball's R&R. For the following reasons, the Court adopts the R&R as the Court's opinion.

I.     Background

       In 1999, Bryant injured her knee while working as a nurse at the Veterans Affairs hospital in Jackson, Mississippi. R. [13] at 72 (hearing testimony). As a result, Bryant had numerous knee surgeries over the next eighteen years. *Id.* at 365 (medical records). None of the surgeries fully cured her pain. *Id.* at 78 (hearing testimony). And—significant to her objections—Bryant began using a cane around 2009. *Id.* at 76–78. She frequently wears a knee brace as well. *Id.* at 76–77. Nonetheless, she continued to work at the hospital until March 2014, when she could no longer "handle working in the nursing field" because of the pain from her injury. *Id.* at 71–72.

       On December 31, 2014, Bryant filed an application for disability benefits; the application was denied six months later. *Id.* at 13 (ALJ decision). At Bryant's request, an ALJ held a

hearing on Bryant's benefit eligibility in May 2017. *Id.* During that hearing, the ALJ heard Bryant's testimony—which included her description of using a cane to walk—and received the opinions of a Vocational Expert (VE) regarding jobs she could perform. *Id.* at 17. After receiving that testimony and reviewing the evidence, the ALJ found that Bryant has "degenerative joint disease in her right knee." *Id.* at 16. But he nevertheless concluded that Bryant "ha[d] the residual functional capacity to perform sedentary work[,]" *id.* at 19, and that "there are jobs that exist in significant numbers in the national economy that [Bryant] can perform," *id.* at 27. As a result, the ALJ concluded that "the claimant is not disabled" as defined by the Social Security Act. *Id.* at 29.

II.     Standard

"Judicial review in social security appeals is limited to two basic inquiries: '(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards.'" *Gilbert v. Colvin*, No. 3:14-CV-009-HTW-LRA, 2015 WL 4611507, at *2 (S.D. Miss. June 18, 2015) (quoting *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and . . . the court shall review only the question of conformity with [the] regulations and the validity of such regulations.").

"'The [ALJ]'s decision is granted great deference and will not be disturbed unless a reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law.'" *Halterman ex rel. Halterman v. Colvin*, 544 F. App'x 358, 360 (5th Cir. 2013) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)). "A decision is supported by substantial evidence if 'credible evidentiary choices or

medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Williams v. Admin. Review Bd.*, 376 F.3d 471, 476 (5th Cir. 2004) (quoting *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995)).

III.   Analysis

Bryant raises two objections to the R&R. First, she argues that Judge Ball incorrectly concluded that any deficiencies in the ALJ's "consideration of the cane use was harmless error." Objs. [21] at 1 (capitalizations altered). Next, she says "the ALJ erred in evaluating the opinion evidence." *Id.* at 3.

   A.   Bryant's Use of a Cane

In her summary-judgment motion, Bryant said the ALJ erred by failing to make a finding regarding the medical necessity of the cane. Pl.'s Mem. [15] at 10. Judge Ball found the ALJ did not err, but even if he did, Bryant "failed to demonstrate prejudice" because the VE testified that the jobs he identified could be performed by someone with a cane. R&R [19] at 9. when he did not separately consider the medical necessity of a cane in his decision[.]" R&R [19] at 9. I think Bryant is arguing that Judge Ball was wrong on this point because he misinterpreted the record, which showed that a cane was necessary and therefore she could not work as a result.

The disputed testimony occurred after the VE explained that Bryant could work as an addresser, film touch-up inspector, or table worker. R. [13] at 91 (hearing testimony). The ALJ asked, "Would it matter if the hypothetical individual would need a cane for those periods of time when they were standing and walking?" *Id.* at 92. The VE responded:

> [I]t would not, Your Honor, just involving incidental use of a cane and I believe Ms. Bryant indicated she used the cane for about eight years, so some of that would cover similar employment, but in this case, the use of a cane periodically, in my opinion would not preclude these jobs.

3

*Id.*

In her Objections, Bryant says Judge Ball incorrectly analyzed whether the evidence supported the ALJ's conclusion that the necessity of a cane did not limit her work ability and incorrectly concluded that even if error occurred, it was harmless. Objs. [21] at 2. In general, she says the VE's testimony fails to fully account for the extent to which she is dependent on a cane. While she acknowledges the VE's testimony regarding jobs a person could perform "using [a] cane 'incidentally,'" *id.* at 2, Bryant insists that she "explained [to the ALJ] that she used the cane all the time" when not leaning against something, *id*.

But Bryant's actual testimony and the other evidence is less emphatic. Indeed, she testified that she can and does walk without a cane for short distances. R. [13] at 77–78 (hearing testimony). And her surgeon, Dr. Dulske, agreed, stating that she could walk without a cane for fifteen feet. *Id.* at 346 (medical source statement).

So, the more accurate question is whether the VE addressed the ability to perform the available jobs while using a cane to walk more than a short distance or when standing with nothing to lean against. Significantly, the jobs the VE identified involve only *occasional* standing and walking. *See* U.S. Dep't of Labor, Dictionary of Occupational Titles §§ 209.587-010, 726.684-050, 739.687-182. That is, Bryant would not be constantly, or even frequently, using her cane, and there is no evidence suggesting that she requires a cane while sitting. The VE's response captured the issue.

Thus, whether procedural error occurred, there is substantial evidence that constant use of a cane while standing without something to lean against or walking more than short distances would not preclude Bryant's employment as an addresser, film touch-up inspector, or table worker. R. [13] at 92 (hearing testimony). Any purported error was harmless.

4

B.   Opinion Evidence

Bryant also argues that "the ALJ erred in evaluating the opinion evidence." Objs. [21] at 3 (capitalization altered). She challenges the ALJ's use of opinion evidence on two grounds: the way he evaluated the opinions and his rejection of the push/pull ability opinion.

1.   The Way the ALJ Weighed Opinion Evidence

First, Bryant says the ALJ should have afforded Dr. Dulske's opinions more weight. *Id.* at 4. According to her, the ALJ improperly "substitute[d] his own opinion for that of a medical professional[.]" *Id.* at 5 (citing *Taylor v. Astrue*, 706 F.3d 600 (5th Cir. 2012)). And more specifically, Bryant says *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), "prohibits an ALJ from rejecting *all* medical opinions in the record and independently assessing a claimant's [alleged disability] without the aid of medical evidence. That is what happened herein." *Id.* (emphasis added).

Judge Ball's R&R lays out the correct legal standards for this issue, so they will not be repeated. But as to Bryant's objections, the Court first notes that the general rule giving "considerable weight" to opinions from treating physicians "ceases to apply . . . when a treating physician's testimony is 'brief or conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence.'" *Foster v. Astrue*, 410 F. App'x 831, 832–33 (5th Cir. 2011) (quoting *Perez v. Barnhart*, 415 F.3d 457, 465–66 (5th Cir. 2005)). Here, the opinions to which the ALJ gave little weight came from Dr. Dulske's medical source statement. R. [13] at 24 (ALJ decision). And as Judge Ball noted, Dr. Dulske primarily circled or checked items on a questionnaire, which "typifies 'brief or conclusory' testimony" that is not afforded considerable weight. R&R [19] at 11 (quoting *Foster*, 410 F. App'x at 833).

5

Factually, the ALJ did not reject Dr. Dulske's opinions *in toto*. True enough, he afforded little weight to some opinions reflected in the medical source statement, finding them inconsistent "with the evidence of record or with [Bryant]'s admissions concerning her abilities." R. [13] at 24 (ALJ decision). But other opinions were given "moderate weight" when deemed "consistent with the evidence of record and [Bryant]'s testimony." *Id.* at 25.

And while "[t]he ALJ cannot reject a medical opinion without an explanation," *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000), that is not what happened. The ALJ recognized and addressed the factors for considering an expert's opinions under 20 C.F.R. § 404-1527(c) and *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000). *See* R. [13] at 20 (ALJ decision) ("The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR [§] 404.1527."). And he explained why certain opinions were given little weight. For example, he noted that "[c]ontrary to Dr. Dulske's statement that [Bryant] could not travel without companion assistance, the claimant has admitted that she can do that." *Id.*

This is exactly what the Fifth Circuit approved in *Taylor*, where the court affirmed the ALJ's decision even though he disregarded opinion testimony because "the ALJ used the medical information provided by [the plaintiff] to determine [his] residual functional capacity for work." 706 F.3d at 602. Indeed, "[w]hat [Bryant] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine [her] capacity for work." *Id.* at 603.

Finally, *Ripley* does not say otherwise. In that case, the Fifth Circuit found that the ALJ's decision, which concluded that the plaintiff could perform sedentary work, was not supported by substantial evidence because "the only evidence regarding [the plaintiff]'s ability to work came from [his] own testimony." *Ripley*, 67 F.3d at 557. The ALJ had not requested a medical source

statement and otherwise failed to develop the record. *Id.* Thus, there was no medical opinion to evaluate. *Id.* Stated simply, *Ripley* did not bar an ALJ from discrediting a treating physician's medical source statement consistent with 20 C.F.R. § 404-1527(c). *Id.*

Here, when assessing Bryant's residual functional capacity, the ALJ reviewed Dr. Dulske's conclusory medical source statement and found that it was contradicted in some respects by the medical evidence of record and Bryant's own testimony. *See* R. [13] at 24–26 (ALJ decision). Judge Ball correctly assessed this issue.

### 2. Bryant's Ability to Push, Pull, or Reach

Next, Bryant contends that Judge Ball did not consider that the "ALJ never mentions Dr. Dulske's restriction of occasionally reaching and push/pulling" when determining her residual functional capacity and eligible employment. Objs. [21] at 4. While it may be true that Judge Ball did not directly focus on this singular point, his recommendation adequately assesses whether the ALJ was justified in giving little weight to some of Dr. Dulske's opinions.

But, looking more specifically at this issue, Bryant's description of the ALJ's decision is not entirely accurate. In the medical source statement, Dr. Dulske indicated that Bryant was able to occasionally reach and "push/pull" with each hand. R. [13] at 347 (medical source statement). Dr. Dulske also noted that she could "handl[e]," "finger[]," and "feel[]" continuously. *Id.* The ALJ acknowledged these findings, expressly stating that the doctor "opined she could only occasionally reach, push or pull with either upper extremity." *Id.* at 24 (ALJ decision). Thus, Bryant's objection that "[t]he ALJ never mention[ed]" the push/pull restriction, Objs. [21] at 4, is belied by the record.

It is true, however, that the ALJ accorded the opinion little weight, finding it was "not consistent with the evidence of record or with the claimant's admissions concerning her

7

abilities." R. [13] at 24 (ALJ decision). *Id.* And he later described various functions Bryant could perform indicating "good bilateral manual dexterity and upper extremity strength." *Id.* at 25.

Finally, substantial evidence supports the ALJ's conclusion. Neither Bryant's summary-judgment motion nor her objections cite any medical records backing Dr. Dulske's assessment of her ability to push and pull, and the Court is not aware of any. Moreover, Bryant testified that she can drag a laundry basket full of clothes across the floor and can complete household chores on her own. *Id.* at 82–83 (hearing testimony). The ALJ correctly acknowledged but did not accept Dr. Dulske's assessment of Bryant's ability to push, pull, or reach.

IV. Conclusion

This is not a *de novo* review of the evidence. Regardless of its opinion of the evidence, a district court must follow the standards of review. Under those standards, and having considered all arguments, the Court agrees with Judge Ball's recommendations. Those issues that have not been expressly addressed would not have changed the outcome. For the reasons stated, the Court denies Bryant's Motion for Summary Judgment [14], adopts the R&R [19], and affirms the ALJ's decision. A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 23rd day of March, 2020.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE